# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF VIRGINIA
## CHARLOTTESVILLE DIVISION

| | |
|---|---|
| PBM CAPITAL INVESTMENTS, LLC, *ET AL.*, <br> *Plaintiffs,* <br><br> v. <br><br> GENERAL ELECTRIC COMPANY, <br> *Defendant.* | CASE NO. 3:15–cv–00037 <br><br> <u>MEMORANDUM OPINION</u> <br><br> JUDGE NORMAN K. MOON |

The Court now considers Defendant General Electric Company's ("GE") motion to dismiss for lack of personal jurisdiction (docket no. 4), motion to stay litigation and compel arbitration (docket no. 5), and motion to dismiss for failure to state a claim (docket no. 11).

Plaintiffs are PBM Technologies AB ("PBM Technologies") and PBM Capital Investments, LLC ("PBM Capital") (collectively, "PBM" or "Plaintiffs"). PBM Technologies is a private limited liability company registered in Sweden with its principal place of business in Mölnlycke, Sweden. PBM Capital is a Delaware limited liability company with its principal place of business in Charlottesville, Virginia. Plaintiffs filed this suit after they purchased a life-support ventilator company from one of GE's subsidiaries, and they allege that GE defrauded them in connection with the sale.

Because the Court lacks personal jurisdiction over GE, its motion to dismiss will be granted.

## I. FACTS AS ALLEGED

This case arises from the purchase of Breas Medical AB ("Breas") by PBM from one of GE's subsidiaries. Breas is a Swedish company that manufactures home respiratory ventilators and sleep apnea products for the global home healthcare market.

Breas' flagship product is the Vivo 50 Life-Support Ventilator ("Vivo 50"). The Vivo 50 is operated by actions performed on a front panel where buttons and a screen are located. On August 6, 2013, while Breas was still owned and operated by GE or GE's subsidiaries, a Vivo 50 being used by a patient in Germany unexpectedly stopped working and shut down without triggering a warning alarm.

Breas investigators determined that the incident was caused by silver migration—"essentially corrosion that bleeds from one printed circuit channel to another in the product's circuit board." Docket No. 26, at 3. They concluded that silver migration took place at the on/off button and created a short circuit that mimicked an intentional user-inputted shutdown sequence. Breas presented this initial report to GE, along with the initial assessment that the Vivo 50's risk level was not as low as reasonably possible ("ALARP"). The investigators found that a recall would, therefore, likely be necessary.

The prospect of a recall alarmed GE. At the time, GE was considering whether to sell Breas, and it believed that a recall of the Vivo 50 would make the company unsellable. Moreover, it determined that, should it fail to sell Breas, it would have to close the company. GE executive Neal Sandy resolved to "use this new complaint to articulate the real risk and why we must sell [Breas]." Compl. ¶ 58. Sandy nevertheless urged Breas' executives to tell potential buyers about "how great your business is ☺." *Id.* at ¶ 3.

In order to make Breas as marketable as possible, GE allegedly censored and distorted the August 6th incident's investigation report. GE removed references to silver migration as the cause of the incident, attributing the shutdown instead to user error through use of excessive cleaning fluid. GE ordered the incident report to find that the Vivo 50 was, contrary to the initial report, at ALARP, and thus that a recall would not be necessary. GE also ordered Breas

engineers to scrub any mention of "additional mitigation(s)" that might be necessary to fix the Vivo 50. *Id.* at ¶ 72.

Soon thereafter, GE employees began meeting with PBM about the possibility of purchasing Breas. GE made various representations to PBM about Breas, but downplayed the significance of the August 6th incident. GE did not disclose that the malfunction had been caused by silver migration, or that silver migration could cause Vivo 50s to unexpectedly shut down without alarm. GE allegedly mischaracterized the incident in a desperate attempt to sell Breas. As GE executive Akel Akel allegedly stated to the Breas CEO, "[I]f we do not get this done nothing else matters." *Id.* at ¶ 77.

After these meetings ended and PBM reviewed the due diligence, PBM signed an irrevocable offer letter in Charlottesville, Virginia, on November 22, 2013. An Agreement closing the transaction was signed on January 31, 2014, finalizing the sale of Breas to PBM.

In October 2014, silver migration caused two more unexpected shutdowns of the Vivo 50. Breas, now owned by PBM, took corrective action through a recall. To PBM's surprise, Breas engineers informed them that the same problem occurred under GE's ownership. Moreover, PBM learned that GE had identified a solution to the problem, but that no field action had been implemented. The fix—which PBM implemented to the tune of several million dollars—changed the Vivo 50's firmware to require two buttons to turn off the device instead of one.

## II. DISCUSSION

At issue is whether the Court has personal jurisdiction over GE. The Court may assert personal jurisdiction over GE only if (1) its "contacts with Virginia satisfy the Virginia long-arm statute (Va. Code § 8.01-328.1)," and (2) "the statutory assertion of jurisdiction is consistent with

- 3 -

Case 3:15-cv-00037-NKM   Document 46   Filed 07/22/16   Page 3 of 9   Pageid#: 456

the Due Process Clause of the Constitution." *Bay Tobacco, LLC v. Bell Quality Tobacco Prods., LLC*, 261 F. Supp. 2d 483, 491 (E.D. Va. 2003) (citing *English & Smith v. Metzger*, 901 F.2d 36, 38 (4th Cir. 1990)); *see also Carefirst of Maryland v. Carefirst Pregnancy Ctrs.*, 334 F.3d 390, 396 (4th Cir. 2003) (same). It is the Plaintiffs' burden "to prove grounds for jurisdiction by a preponderance of the evidence." *Combs v. Bakker*, 886 F.2d 673, 676 (4th Cir. 1989).

A. Virginia's Long-Arm Statute

The Court begins its analysis by considering whether personal jurisdiction can be had under Virginia's long-arm statute. Plaintiffs rely on Section 8.01-328.1(A)(4) of the Code of Virginia, which provides that:

> A. A court may exercise personal jurisdiction over a person . . . as to a cause of action arising from the person's:
>
> 4. Causing tortious injury in this Commonwealth by an act or omission outside this Commonwealth if he regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered, in this Commonwealth.

Virginia's long-arm statute is satisfied on these facts. GE's allegedly tortious conduct occurred outside of the Commonwealth, and it harmed PBM Capital, which is located in the Commonwealth. Moreover, GE regularly does business in the Commonwealth, because it operates, among other things, a factory in Virginia. *See Bay Tobacco*, 261 F. Supp. 2d at 495.

B. Constitutional Due Process

The Court's inquiry does not end, however, because Plaintiffs "must not only meet the requirements of the long-arm statute, [they] must also prove that this Court's exercise of jurisdiction would not violate the due process requirements of the United States Constitution." *Bay Tobacco*, 261 F. Supp. 2d at 495 (citing *Metzger*, 901 F.2d at 38); *see also Carefirst*, 334 F.3d at 396; *Peanut Corp. of Am. v. Hollywood Brands, Inc.*, 696 F.2d 311, 313 (4th Cir. 1982).

In the case of an out-of-state defendant, the court may exercise personal jurisdiction "either by a proper 'finding of specific jurisdiction based on conduct connected to the suit or by a proper finding of general jurisdiction'" *Young v. New Haven Advocate*, 315 F.3d 256, 261 (4th Cir. 2012) (quoting *ALS Scan, Inc. v. Dig. Serv. Consultants, Inc.*, 293 F.3d 707, 711 (4th Cir. 2002)) (alterations omitted). Accordingly, the Court must determine whether Plaintiffs' allegations give rise to either specific or general jurisdiction.

Specific jurisdiction exists "if the defendant's contacts with the forum state [] provide the basis for the suit." *Carefirst*, 334 F.3d at 398. Plaintiffs rely on Section 8.01-328.1(A)(4) of the Virginia Code, and therefore by definition allege that GE's tortious conduct occurred *outside* of the Commonwealth. In particular, the fraudulent misrepresentations occurred in Sweden, Wisconsin, and Illinois, and GE's alleged doctoring of the investigation report also occurred out of the Commonwealth. There is no allegation that GE made any misrepresentations in Virginia, or that it entered or sent anything into the state at all related to the contract negotiation. In this way, none of the conduct giving rise to this suit arose out of GE's contacts with Virginia.

Plaintiffs' primary argument is that GE knew it was dealing with a Virginia company, and therefore must be subject to specific jurisdiction in Virginia. Knowledge on the part of GE that it was dealing with a Virginia company is not, however, sufficient where there is no evidence that "'an out-of-state person h[as] engaged in some activity purposefully directed toward the forum state.'" *Autoscribe Corp. v. Goldman & Steinberg*, 47 F.3d 1164 (Table), 1995 WL 56662, at *4 (4th Cir. Feb. 3, 1995) (unpublished) (quoting *Lesnick v. Hollingsworth & Vose Co.*, 35 F.3d 939, 945 (4th Cir. 1994)); *see also Pebble Beach Co. v. Caddy*, 453 F.3d 1151, 1158 (9th Cir. 2006) (knowledge that plaintiff lives in a state "is not an independent act that can be interpreted as being expressly aimed at [a state].")."Although the place that the plaintiff feels

the alleged injury is plainly relevant to the [jurisdictional] inquiry, it must ultimately be accompanied by the defendant's own contacts with the state if jurisdiction over the defendant is to be upheld." *ESAB Group, Inc. v. Centricut, Inc.*, 126 F.3d 617, 626 (4th Cir. 1997). Here, it was merely incidental that one of the Plaintiffs happened to reside in Virginia. Plaintiffs have failed to plead any evidence, as they must, to show that GE "'expressly aimed [its] tortious conduct at the forum, *such that the forum can be said to be the focal point of the tortious activity*.'" *Consulting Eng'gs Corp. v. Geometric Ltd.*, 561 F.3d 273, 280 (4th Cir. 2009) (quoting *Carefirst*, 334 F.3d at 398 n.7) (emphasis in original).

In short, none of GE's contacts with Virginia gave rise to this suit, and there is nothing to suggest GE aimed its conduct at Virginia. Where, as here, "Plaintiff's tort claims arise only out of the defendant['s] alleged activities *outside* of Virginia," specific jurisdiction cannot exist, and therefore the Court must "determine whether it may exercise general jurisdiction over the [Defendant]." *Bay Tobacco*, 261 F. Supp. 2d at 497 (emphasis in original); *see also Nichols v. G.D. Searle & Co.*, 991 F.2d 1195, 1199 (4th Cir. 1993) ("When, as in the case at bar, a suit does not arise out of the defendant's activities in the forum state, the court must [rely on general jurisdiction].").

The Supreme Court has recently emphasized that general all-purpose jurisdiction will exist in only narrow circumstances and that "only a limited set of affiliations with a forum will render a defendant amenable to all-purpose jurisdiction there." *Daimler AG v. Bauman*, 134 S. Ct. 746, 754 (2014); *see also id.* at 754–55 ("[S]pecific jurisdiction will come into sharper relief and form a considerably more significant part of the scene."). The appropriate inquiry is "whether [a non-resident] corporation's affiliations with the State are so 'continuous and

systematic' *as to render it essentially at home* in the forum State." *Daimler*, 134 S. Ct. at 761 (quotation marks and alteration omitted) (emphasis added).

The "paradigm bases" for a corporation to be "essentially at home" in a state are "the place of incorporation and principal place of business." *Daimler*, 134 S. Ct. at 760. That a corporation regularly does business in the forum state is not necessarily sufficient to establish general jurisdiction. Indeed, general jurisdiction does not exist simply because of "the magnitude of the defendant's in-state contacts." *Id.* at 762 n.20. Instead, the court must consider the defendant's activities "in their entirety, nationwide and worldwide. A corporation that operates in many places can scarcely be deemed at home in all of them." *Id.*

GE is not incorporated in Virginia, and it does not have its principal place of business in Virginia.[1] Accordingly, the "paradigm bases" for establishing general jurisdiction are absent, and general jurisdiction exists only if this is "an exceptional case [in which GE's] operations in [Virginia are] so substantial and of such a nature as to render the corporation at home in that State." *Daimler* 134 S. Ct. at 761 n.19.

Plaintiff points to the fact that GE operates two "brick and mortar" facilities in Virginia. The first is a manufacturing plant located in Salem, Virginia, which GE has operated for more than sixty years. The facility employs more than 700 manufacturing employees, engineers, and support staff.[2] Second, Plaintiff notes that GE Digital, "[a] division of GE, is headquartered in Charlottesville, VA." *See* GE Digital, ADVANTAGE INDUSTRIAL AUTOMATION, http://www.advantageind.com/product-resources/manufacturers/ge/.

---

[1] As stated *infra*, Part I, GE is incorporated in New York and has its principal place of business in Connecticut.

[2] *See* GE Industrial Solution, *GE Celebrates 60th Anniversary of Salem Manufacturing Plant*, www.geindustrial.com/news/ge-celebrates-60th-anniversary-salem-manufacturing-plant.

- 7 -

Although GE's contacts with Virginia are not insignificant, they are not so substantial as to render GE essentially at home in the state. Although GE does maintain a physical presence in Virginia, this is not, alone, sufficient. In *Daimler*, the Supreme Court found that California lacked general jurisdiction over the defendant despite the fact that it operated "multiple California-based facilities" and was "the largest supplier of luxury vehicles to the California market." *Daimler*, 134 S. Ct. at 753. The contacts GE has with Virginia are less than what the defendant in *Daimler* had with California, and PBM has made no showing that GE's contacts with Virginia present an "exceptional case."

Finally, Plaintiff argues, *reductio ad absurdum*, that the court *must* have *some kind* of jurisdiction over GE because it is "one of the largest corporations in the world, [and] derives substantial revenue from Virginia that would subject it to personal jurisdiction independently of any persistent course of conduct." Resp. 11 n.5. This position ignores entirely *Daimler's* admonitions that "specific jurisdiction has become the centerpiece of modern jurisdiction theory, while general jurisdiction [has played] a reduced role," *Daimler*, 134 S. Ct. at 755 (quotation marks omitted) (alteration in original), and that "[a] corporation that operates in many places can scarcely be deemed at home in all of them." *Id.* at 762 n.20. Plaintiffs would have the Court disregard the Supreme Court's clear statement that it has "declined to stretch general jurisdiction beyond limits traditionally recognized," i.e., incorporation and principal place of business, except in exceptional circumstances. *Id.* at 757–58. Accordingly, the court lacks general jurisdiction over the GE.

### III. CONCLUSION

For the above stated reasons, GE's motion to dismiss for lack of personal jurisdiction will be granted. GE's other motions will be denied as moot, and the case will be dismissed from the Court's active docket.

The Clerk of the Court is hereby directed to send a certified copy of this Memorandum Opinion and the accompanying Order to all counsel of record.

Entered this ___22nd___ day of July, 2016.

_____
NORMAN K. MOON
UNITED STATES DISTRICT JUDGE